UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| **ANTHONY TAYLOR** | **CIVIL ACTION NO. 22-2174** |
| | **SECTION P** |
| **VS.** | |
| | **JUDGE ELIZABETH E. FOOTE** |
| **BAYOU DORCHEAT CORRECTIONAL CENTER, ET AL.** | **MAG. JUDGE KAYLA D. MCCLUSKY** |

### REPORT AND RECOMMENDATION

Plaintiff Anthony Taylor, a prisoner at Bayou Dorcheat Correctional Center ("BDCC") proceeding pro se and in forma pauperis, filed this proceeding on approximately July 19, 2022, under 42 U.S.C. § 1983. He names the following defendants: BDCC, Officer Johnny Wright, Major Culpepper, and Nurse Christy. For reasons that follow, the Court should dismiss Plaintiff's claims.[1]

### Background

Plaintiff states that on April 4, 2022, he was in a vehicular accident while being transported from House of Raeford Chicken Plant to BDCC. [doc. #s 1, p. 3; 1-2, p. 1]. Officer Johnny Wright was driving the transportation van in which Plaintiff was a passenger. *Id.*

Plaintiff explains that a large truck maneuvered adjacent to the transportation van as the van traveled on Interstate 20. [doc. # 1-2, p. 1]. "Something came off the truck and busted the glass on the side door. Some of the glass became lodged in [Plaintiff's] right eye and right ear." *Id.* at 2. Plaintiff claims that although he immediately reported his injury to Officer Wright,

---

[1] This matter has been referred to the undersigned for review, report, and recommendation under 28 U.S.C. § 636 and the standing orders of the Court.

Wright "threw it off as if it was nothing . . . ." *Id.* at 1. Wright "called Major Culpepper and informed him of the incident." *Id.* at 2. Plaintiff claims that it "was Major Culpepper's decision to bring [Plaintiff] back to BDCC instead of allowing the paramedics to check [him] out." [doc. # 9]. Plaintiff claims that Officer Wright drove Plaintiff and other inmates back to BDCC instead of calling paramedics. [doc. #s 1, p. 3; 1-2, p. 2].

When Plaintiff arrived at BDCC, Major Culpepper and a nurse met him outside to check for injuries. [doc. # 1-2, p. 2]. Plaintiff was "brought inside for examination." *Id.* He was unable to open his right eye, "so the nurse asked Major Culpepper to hold it open so she could wash it out." *Id.* "A chunk of glass was then pulled out of [Plaintiff's] right ear." *Id.* Plaintiff claims, however, that Major Culpepper and Nurse Christy refused to send him to the hospital and "stated that they were trying to keep from sending [him] to the emergency room." [doc. # 9]. He adds that Nurse Christy had the authority to send him to the hospital. *Id.* He also claims that BDCC failed to send him "to the emergency room for proper medical attention." [doc. # 1, p. 3].

On April 6, 2022, a physician at BDCC, Dr. Heard, told Plaintiff that he did "not have the proper tools to examine" Plaintiff's injuries and that Plaintiff "should have been sent to the E.R. at the time of the injury." [doc. # 9]. The same day, Plaintiff was transported to an emergency room. [doc. # 1-2, p. 2]. After he was examined there, he was transported to "Shreveport Ophthalmology," where he was informed that his "eye and ear were irritated." *Id.* He attaches a letter from a physician at Shreveport-Ophthalmology, in which the physician states that Plaintiff is excused from work from April 4-6, 2022, and that he "may return to work/school on 4/7/22 with no restrictions." *Id.* at 3.

Plaintiff maintains that "about one and a half months later" his eye was blurry and he had headaches. *Id.* at 2. He was provided sinus medication and told "that it would take two weeks to see the doctor." *Id.*

Plaintiff states that he was told that he was "supposed to have seen the doctor on April 14, but this never happened." *Id.* On June 29, 2022, he "was called to see the doctor at BDCC." *Id.*

On July 26, 2022, and August 10, 2022, BDCC informed Plaintiff that he had an appointment with Shreveport-Ophthalmology, but Plaintiff claims that as of September 7, 2022, he has "yet to be taken for an appointment." [doc. # 9].

Plaintiff seeks $100,000.00, the suspension of Officer Wright's employment, and a transfer to "a better work release down south." [doc. # 1, p. 4].

## Law and Analysis

**1. Preliminary Screening**

Plaintiff is a prisoner who has been permitted to proceed in forma pauperis. As a prisoner seeking redress from an officer or employee of a governmental entity, his complaint is subject to preliminary screening pursuant to 28 U.S.C. § 1915A.[2] *See Martin v. Scott,* 156 F.3d 578, 579-80 (5th Cir. 1998) (*per curiam*). Because he is proceeding in forma pauperis, his Complaint is also subject to screening under § 1915(e)(2). Both § 1915(e)(2)(B) and § 1915A(b) provide for *sua sponte* dismissal of the complaint, or any portion thereof, if the Court finds it is frivolous or malicious, if it fails to state a claim on which relief may be granted, or if it seeks

---

[2] Under 28 U.S.C. § 1915(h), "'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program."

3

monetary relief against a defendant who is immune from such relief.

A complaint is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams,* 490 U.S. 319, 325 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Id.* at 327. Courts are also afforded the unusual power to pierce the veil of the factual allegations and dismiss those claims whose factual contentions are clearly baseless. *Id.*

A complaint fails to state a claim on which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007); accord *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). A claim is facially plausible when it contains sufficient factual content for the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570). Plausibility does not equate to possibility or probability; it lies somewhere in between. *Id.* Plausibility simply calls for enough factual allegations to raise a reasonable expectation that discovery will reveal evidence to support the elements of the claim. *Twombly*, 550 U.S. at 556.

Assessing whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal, supra.* A well-pled complaint may proceed even if it strikes the court that actual proof of the asserted facts is improbable and that recovery is unlikely. *Twombly, supra*.

In making this determination, the court must assume that all of the plaintiff's factual allegations are true. *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998). However, the same presumption does not extend to legal conclusions. *Iqbal, supra*. A pleading comprised of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" does not

satisfy Rule 8. *Id*. "[P]laintiffs must allege facts that support the elements of the cause of action in order to make out a valid claim." *City of Clinton, Ark. v. Pilgrim's Pride Corp*, 632 F.3d 148, 152-53 (5th Cir. 2010). Courts are "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir. 1994).

A hearing need not be conducted for every pro se complaint. *Wilson v. Barrientos*, 926 F.2d 480, 483 n.4 (5th Cir. 1991). A district court may dismiss a prisoner's civil rights complaint as frivolous based upon the complaint and exhibits alone. *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir. 1986).

"To state a section 1983 claim, a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013) (internal quotation marks omitted). Consistent with the standard above, a "[S]ection 1983 complaint must state specific facts, not simply legal and constitutional conclusions." *Fee v. Herndon*, 900 F.2d 804, 807 (5th Cir. 1990).

**2. Medical Care**

A plaintiff "must demonstrate that a government official was deliberately indifferent to 'a substantial risk of serious medical harm.'" *Bailey v. E. Baton Rouge Par. Prison*, 663 F. App'x 328, 330 (5th Cir. 2016) (*quoting Wagner v. Bay City*, 227 F.3d 316, 324 (5th Cir. 2000)). A prison official acts with deliberate indifference to an inmate's health "only if he knows that [the] inmate[ ] face[s] a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994); *see Reeves v. Collins*, 27 F.3d 174, 176-77 (5th Cir. 1994) (applying *Farmer* to a denial of medical care

5

claim). A plaintiff must establish that a prison official "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006).

"[N]either an incorrect diagnosis nor the failure to alleviate a significant risk that should have been perceived, but was not, is sufficient to establish deliberate indifference." *Blank v. Bell*, 634 F. App'x 445, 448 (5th Cir. 2016). "Unsuccessful treatment, medical malpractice, and acts of negligence do not constitute deliberate indifference; nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances. Moreover, a delay in treatment is not unconstitutional, unless there has been deliberate indifference that results in substantial harm. In short, [d]eliberate indifference is an extremely high standard to meet." *Id.* (internal quotation marks and quoted sources omitted); *see Alton v. Tex. A & M Univ.*, 168 F.3d 196, 201 (5th Cir. 1999) ("Actions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference."); *Frazier v. Keith*, 707 F. App'x 823, 824 (5th Cir. 2018) ("The choice between forms of treatment is a classic example of a matter of professional judgment and does not support a finding of deliberate indifference.").

A. <u>Transporting Plaintiff to BDCC Instead of Calling an Ambulance</u>

"Glass became lodged in [Plaintiff's] right eye and right ear." He claims that, although he immediately reported his injury to Officer Wright, Wright "threw it off as if it was nothing . . . ." Wright "called Major Culpepper and informed him of the incident." Plaintiff claims that it "was Major Culpepper's decision to bring [Plaintiff] back to BDCC instead of allowing the paramedics to check [him] out." Plaintiff claims that Officer Wright drove Plaintiff and other inmates back to BDCC instead of calling paramedics.

6

Plaintiff does not indicate how far away he was from BDCC after he left House of Raeford Chicken Plant en route to BDCC on Interstate 20. That said, the undersigned takes judicial notice that House of Raeford Chicken Plant is at most 31.5 miles away from BDCC when travelling via Interstate 20 and that the travel time between the two locations is approximately thirty minutes.[3]  GOOGLE MAPS, http://www.google.com/maps (last visited September 22, 2022).

Plaintiff does not describe deliberate indifference by either Wright or Culpepper. Choosing to transport Plaintiff—who had glass in his eye and ear—approximately 31.5 miles (at most) back to BDCC for treatment by a nurse instead of calling paramedics does not reflect deliberate indifference.[4]  Moreover, Plaintiff does not allege that Wright or Culpepper failed to

---

[3] Under FED. R. EVID. 201(b)(2), courts "may judicially notice a fact that is not subject to reasonable dispute because it: . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Moreover, judicial notice may be taken at any stage of the proceeding. FED. R. EVID. 201(f); *see Deutch v. U.S.*, 367 U.S. 456, 470 (1961) (taking judicial notice of the distance between two cities); *Boyce Motor Lines v. U.S.*, 342 U.S. 337, 344 (1952) ("We may, of course, take judicial notice of geography."); *Munson S.S. Lines v. Newman*, 24 F.2d 416, 417 (5th Cir. 1928) (taking judicial notice of the distance between cities); *Hanes Supply Co. v. Valley Evaporating Co.*, 261 F.2d 29, 35 (5th Cir. 1958) (taking judicial notice of the distance between cities); *U.S. v. Perea-Rey*, 680 F.3d 1179, 1182 (9th Cir. 2012) (taking judicial notice of a Google map); *Pahls v. Thomas*, 718 F.3d 1210, n.1 (10th Cir. 2013) (taking judicial notice of a Google map as a source whose accuracy cannot reasonably be questioned); *U.S. v. Piggie*, 622 F.2d 486, 488 (10th Cir. 1980) ("Geography has long been peculiarly susceptible to judicial notice for the obvious reason that geographic locations are facts which are not generally controversial . . . ."); *U.S. v. Burroughs*, 810 F.3d 833, 835 n.1 (D.C. Cir. 2016) (taking judicial notice of a Google map); *Feminist Majority Found. v. Hurley*, 911 F.3d 674, 711 (4th Cir. 2018); *Livingston Christian Schs. v. Genoa Charter Twshp.*, 858 F.3d 996, 1008 (6th Cir. 2017); *see also David J. Dansky*, THE GOOGLE KNOWS MANY THINGS: JUDICIAL NOTICE IN THE INTERNET ERA, 39 Colo. Law. 19, 24 (2010) ("Most courts are willing to take judicial notice of geographical facts and distances from private commercial websites such as MapQuest, Google Maps, and Google Earth.").

[4] *See Rogers v. Boatright*, 709 F.3d 403, 410 (5th Cir. 2013) (finding—where (1) the plaintiff sustained head, neck, spinal, vision, and hand injuries in a prison van, (2) he endured a 5.5-hour delay in care because officers took him back to the prison's medical department instead of to an emergency room as instructed by a physician, and (3) a physician treated him when he returned

7

timely transport him back to BDCC, denied him care when he arrived at BDCC, or that BDCC lacked the means by which to arrange care.

Further, Plaintiff does not allege that he endured a delay in care. Even assuming he did, for example, allege that he would have received care sooner if a defendant would have summoned paramedics, he does not allege that he suffered substantial harm from any delay. *See Rogers v. Boatright*, 709 F.3d 403, 410 (5th Cir. 2013) (finding no claim where the plaintiff did not allege that "the five-hour delay that resulted from their decision to take [the plaintiff] to the prison medical department had resulted in substantial harm.").

Wright and Culpepper did not refuse to treat Plaintiff, ignore his complaints, intentionally treat him incorrectly, or engage in any similar conduct that would clearly evince a wanton disregard for any serious medical needs. At best, Plaintiff pleads potential negligence.[5] He does not describe wanton disregard or a "cold hearted, casual unwillingness to investigate what can be done for a man who is obviously in desperate need of help[.]" *See Davis v. Lithicum*, 574 F. App'x 379, 380 (5th Cir. 2014); *Zaunbrecher v. Gaudin*, 641 F. App'x 340, 346 (5th Cir.

---

to the prison—that officers did not show deliberate indifference or act with "wanton disregard" "by transporting him to the prison medical department instead of taking him for immediate evaluation and treatment" in an emergency room because the plaintiff did not allege "facts from which it could be concluded that the officers knew that ignoring the V.A. physician's orders and taking [plaintiff] instead to the prison medical department would pose a substantial risk of serious harm . . . ."); *Jimenez v. Travis Cnty. Sheriff's Dep't*, 856 F. App'x 534, 535 (5th Cir. 2021) (finding, where the plaintiff alleged that defendants failed to provide medical care at the scene of the accident and did not transport him immediately to medical personnel on his return to the correctional facility, that the plaintiff "saw medical staff within three hours of the accident" and that he did not establish that the delay "resulted in substantial physical or psychological harm.").

[5] If Plaintiff wishes to pursue negligence or malpractice claims, he should do so in state court. *See Estelle v. Gamble*, 429 U.S. 97, 107 (1976) ("A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment. At most it is medical malpractice, and as such the proper forum is the state court . . . .").

2016) (defining deliberate indifference as "egregious intentional conduct"); *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001) ("Deliberate indifference is an extremely high standard to meet.").

    B. <u>Refusing to Send Plaintiff to a Hospital</u>

Plaintiff claims that Major Culpepper and Nurse Christy refused to send him to the hospital and "stated that they were trying to keep from sending [him] to the emergency room." [doc. # 9]. He adds that Nurse Christy had the authority to send him to the hospital. *Id.*

Like above, however, Plaintiff does not describe deliberate indifference by either defendant. When Plaintiff arrived at BDCC, a nurse met him outside to check for injuries. Then, inside the facility, a nurse examined and treated him, attempting to wash glass out of his eye and pulling a "chunk" of glass out of his right ear.

Plaintiff does not specify the name of the nurse who examined and treated him. To the extent it was Nurse Christy, Christy did not refuse to treat him, ignore his complaints, or intentionally treat him incorrectly. Rather, Plaintiff simply disagrees with, or is dissatisfied with, the treatment he did receive. *See Dyer v. Houston*, 964 F.3d 374 (5th Cir. 2020) (finding negligence at most where a plaintiff alleged that paramedics should have sent a detainee to the hospital after observing his head injury and learning he had drug-induced psychosis); *Dyer v. Houston*, 964 F.3d 374, 381 (5th Cir. 2020) ("[W]e have long held that the decision whether to provide additional treatment is a classic example of a matter for medical judgment, which fails to give rise to a deliberate-indifference claim.").

To the extent a non-party nurse treated Plaintiff, Plaintiff's allegations suggest that, at worst, Nurse Christy and Major Culpepper simply deferred to the care Plaintiff received from the treating nurse the same day. This does not reflect deliberate indifference: "[A]n official defers to

9

prior treatment—and doesn't delay it—when he knows an injured prisoner has recently received medical care and denies the prisoner's additional treatment request for the same injury. . . . [M]erely refusing to provide additional treatment is insufficient for deliberate indifference." *See Petzold v. Rostollan*, 946 F.3d 242, n. 42 (5th Cir. 2019) (finding that a supervisor did not deny or delay treatment because a nurse already treated the plaintiff's injury and the supervisor, who was aware of the prior treatment, simply "*deferred* to a medical professional's prior treatment."). As the court stated in *Petzold*, a plaintiff "cannot disguise [] deliberate inaction as [] deliberate indifference." *Id.*

Plaintiff does not specifically fault Christy or Culpepper for any delay in receiving care at an emergency room. Even if he did, he does not allege that he suffered any substantial harm from the (at most) two-day delay (April 4-6, 2022) in receiving care at an emergency room. On April 6, 2022, he was transported to "Shreveport Ophthalmology," where he was informed that his "eye and ear were irritated." He attaches a letter from a physician at Shreveport-Ophthalmology, in which the physician states that Plaintiff is excused from work from April 4-6, 2022, and that he "may return to work/school on 4/7/22 with no restrictions." *See Huff v. Manfredi*, 504 F. App'x 342, 344 (5th Cir. 2012) (finding, where the plaintiff alleged "that the defendants delayed and denied him treatment for an eye infection that caused him constant pain, a swollen cheek, and blurry vision[,]" that the plaintiff did not suffer substantial harm because of "inconsequential delays").

C. <u>Failure to Take Plaintiff to a Physician Appointment</u>

Plaintiff alleges that he was told that he was "supposed to have seen the doctor on April 14, but this never happened." On June 29, 2022, he "was called to see the doctor at BDCC." On July 26, 2022, and August 10, 2022, BDCC informed Plaintiff that he has an appointment with

Shreveport-Ophthalmology, but Plaintiff claims that as of September 7, 2022, he has "yet to be taken for an appointment."

Plaintiff, however, does not identify a responsible defendant. To the extent he faults BDCC, it is unamenable to suit as explained below.

Accordingly, the Court should dismiss Plaintiff's claims against Defendants Wright, Culpepper, and Christy.

**3. BDCC**

Plaintiff names BDCC as a defendant. Federal Rule of Civil Procedure 17(b)(3) provides that the "[c]apacity to sue or be sued is determined . . . by the law of the state where the court is located . . . ." Under Louisiana law, an entity must qualify as a "juridical person," which is "an entity to which the law attributes personality, such as a corporation or partnership." LA. CIV. CODE art. 24.

BDCC does not qualify as a juridical person. Accordingly, the Court should dismiss Plaintiff's claims against BDCC.

## Recommendation

For the reasons above, **IT IS RECOMMENDED** that Plaintiff Anthony Taylor's claims be **DISMISSED** as frivolous and for failing to state claims on which relief may be granted.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the**

11

proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

In Chambers, Monroe, Louisiana, this 26th day of September, 2022.

_____
Kayla Dye McClusky
United States Magistrate Judge